The Court of Appeals. We have two cases to be submitted today on oral argument. We'll hear them without a break. We'll begin with Loayza v. Garland. Mr. Jakobczak, you can pronounce it much better than I can, so please correct me. May it please the Court. My name is Kevin Jakobczak on behalf of the petitioner, Solomon Loayza. I'd like to begin by addressing the Court's order carrying the motion, the unopposed motion to withdraw the petition. The Court's order asks the parties to explain the ramifications for the petitioner in each of three scenarios. First, if the Court grants the petition for review. Second, if the Court denies the petition. Or third, if the Court grants the motion to In this appeal, the petitioner did not and could not ask the Court to order the Board of Immigration Appeals to reopen his underlying immigration proceedings. Instead, he asked the Court to remand his previous motion for reopening back to the Court for further consideration. That relief was effectively mooted on June 22nd when the Department of Homeland Security filed a motion in which, a new motion, in which petitioner joined to reopen in front of the Board. That motion is not subject to the time limitations or the basis of the Board's rejection of petitioner's original motion. Because of that, petitioner invoked Rule 40, Fifth Circuit Rule 42.1 to file a motion to withdraw the petition. On our reading of the rule, it is phrased in mandatory terms and says, in all cases in which an unopposed motion to withdraw is filed, the clerk will enter an order of dismissal. So you're telling us we have to do it. We have no choice. Your Honor, I think under Federal Rule 2, the Rules of Propeller Procedure, the Court does have discretion to suspend the rules in certain circumstances, including to expedite proceedings. I don't believe those circumstances are applicable here. And I think more fundamentally, you know, beyond Rule 42.1 itself, when the petitioner or appellant has moved to withdraw his petition or appeal and the other party has no opposition to that, I think there's no longer an adversarial proceeding sufficient to create a case or controversy. Well, there's a difference. I mean, it is true that we not infrequently get motions to dismiss where the parties say they've settled and either they've finalized their settlement or they've basically agreed on the terms and it's just a matter of paperwork. Mutinous there is pretty compelling. But here, the parties haven't agreed on all the underlying issues. I don't see that mutinous or lack of controversy, case or controversy, has anything to do with it. Your Honor, I think it's, the underlying issue itself, the basis of the mutinous is that the petitioner himself is withdrawing his request for relief. And in that situation, when there is no opposition or no prejudice to the other party, there is not a party with a sufficient interest to advocate on behalf of the position. Thank you for, you answered my question directly and I appreciate that. The current motion that's pending, the one that you just referred to, how is it different in practical terms from the motion that was filed in late June to postpone argument and stay proceeding? It's different in practical terms. And just to, I guess, walk through, you know, according to the process, after the motion to hold the proceedings in abeyance, we began obviously mooting. And in that process, you know, realized that the relief that has already been obtained is superior relief to what is being sought here. And so the difference between the motion is here, we're not seeking to hold the proceedings in abeyance, but we're actually seeking to dismiss the petition. Are you trying, are you saying that the Justice Department has agreed to reopen? The Department of Homeland Security has agreed to file, yeah, and the motion is already on file in front of the board. So you're going to get a reopened? The, excuse me, a re-argument? Well, you filed a motion to reopen, right? You only get one of those under the INA. And so the question is, are you going to have a reopened proceeding in front of the Board of Immigration? So under the, under the board's regulations, when there's a joint motion to reopen that is filed, the, there's a no, the time and numerical limitations do not apply, so additional follow-on motions for reopening can be filed. So we, under any motion to reopen, the board has discretion to decide whether or not reopening is appropriate on the underlying, you know, merits of the request for reopening. But the current motion for reopening in front of the board is not time-barred because it is a joint motion. So you're saying that they have no discretion, you're going to get a reopened petition? In any motion for reopening, they have discretion whether or not to grant reopening based on the merits. What I'm saying is that the joint motion to reopen is superior, so the court, the board does have discretion to deny it for the same discretion that it would have to deny any motion to reopen. What it, what the current joint motion does not have is the disability of the untimeliness of the previous motion. So, you know, in the scenario where the petition for review was granted, both motions would be in front of the board essentially seeking the same relief, but one would have to overcome the time bar and one would not, and the one that is not is already in front of the board. Yeah, I'm sorry. After all this time and effort, why has your client agreed to this, or has he agreed to this? The, to answer the second question, yes, the petitioner has agreed to file, you know, we would never file a motion to seek dismissal without agreement from a petitioner, and the reason is what I was just attempting to explain is that the motion that DHS has already agreed to and already filed in front of the board already gives him more than what he could get from a favorable resolution of this appeal because he's already back in front of the board on a motion to reopen that is not subject to the time limitations, would not need the non-protunct relief to cure untimeliness that is at issue here. So you'd rather them make the decision than us? No, no, that's not quite right. Well, the, here we only ask for remand in our, in our petition, so even if we got everything we wanted from you, it would still be back to the board to decide whether or not non-protunct relief is available to cure the untimeliness. We simply ask for remand for further consideration of the non-protunct question, but the board currently has in front of it a new motion that is not subject to untimeliness at all. If we were to grant the current motion under the local rule, the motion to dismiss the petition from you, that would be with prejudice, right? Correct, it would end the litigation as to the previous motion. Okay, you can go ahead and withdraw again. You know, the petitioner, you know, for the reasons we've discussed, petitioner's, you know, position is that the motion to dismiss the, to withdraw the petition, you know, should be granted. I've laid out, you know, our argument as to why on those issues. I'm happy to address any, any other questions that the court may have. Well, why don't you, setting that motion aside for the moment, let's pretend it hadn't been filed, so why don't you, why don't you address the merits of your, of your petition as you did in the, in the revision? Yes, Your Honor. As to the, the first issue regarding the non-protunct relief to cure untimeliness, the board erred by failing to give a reasoned explanation of its decision by failing to address that, that issue at all. In its decision, and this is on page, you know, eight of the record, it instead focuses entirely on an equitable toying argument that is not the argument that petitioner made. Instead, petitioner asked for, for the equitable non-protunct relief to render the motion timely. The board did not address that, did not say that non-protunct is not available, did not say that non-protunct could not cure the untimeliness. Instead, it ignored the argument. And I, I don't mean to take you out of order, but if we started with the second issue first, I'm curious how this actually interacts with the motion to dismiss, so maybe we can tie it all together. Suppose that, as you know, our circuit precedent is very clear, that we do not have jurisdiction over a BIA decision not to grant sua sponte motion, government authority reopening, because that's committed to agency discretion by law, has nothing to do with 1252, it's all done by 701. That might be right, that might be wrong, but our circuit precedent has said that very specifically. So suppose that we think that that means that the motion to sua sponte reopening, there's no jurisdiction over it, it doesn't matter if we think that their decision for not reopening sua sponte was wrong, if they based it on a jurisdictional basis, misreading of the regulation, or they just said, like, we don't feel like it because today's Wednesday. Whatever it is, there's no jurisdiction. If that's the only issue in the case, then we would write an opinion that just says the petition's dismissed, and it says exactly what you wanted to say with respect to the other thing, it just gives a different ground, right? One ground could be we have no jurisdiction because this is committed to agency discretion by law, petition dismissed with prejudice. The other one would say the parties have reached an agreement to withdraw the petition, see our local rule that you and Judge Smith were discussing, petition dismissed with prejudice. It would be the same decretal language with a slightly different explanation as to why. I'm interpreting your question correctly. In both cases, there would be an order finding a lack of jurisdiction. There would be different reasonings behind that. I do think that because petitioner has moved to voluntarily withdraw the petition that there's not, that there's a lack of jurisdiction issue that based on the lack of adversity that prevents, you know, even finding that there is a lack of jurisdiction to reach the merits. I think the lack of an adversarial positioning means that there's no case or controversy. Yeah, I guess I'm not sure if that's right or wrong, but I mean, the Supreme Court has said that when we have different jurisdictional defects in a petition, that there is no order of operations, to quote their language, so we can pick whichever one we want. So, even if you're right that there's no case or controversy, it wouldn't preclude us from saying there's no jurisdiction for a different reason, right? Well, I mean, the motion to dismiss the petition, while there might not be an order of operations for different jurisdictional defects in a case that is adequately presented when the Supreme Court makes a decision, that that's a different situation than an opinion that's considering multiple different jurisdictional defects. Yeah, I'm not aware, I mean, I'd be curious if you can think of a case, but I mean, if suppose we had a diversity case, and one argument is the amount in controversy is $50,000, and the other argument is these people are citizens of the same state. There's no requirement that we do one or the other. It's also true that if, like, we had a diversity case, there was no diversity, but there was also an independent jurisdictional bar over whatever injury in fact, traceability, we could pick whatever we wanted, as long as we're just saying we're dismissing for lack of jurisdiction. I'm also not familiar, I think to most directly answer your question, I'm also not familiar with the case that is addressed in this context. I do think that the dismissal and the sort of abandonment of the claim, you know, would generally occur, for instance, in that situation, you know, before you would ever get to any of those other jurisdictional questions. I'm not aware of a case, you know, that is directly on point to the situation that you raise, and so I will, you know, also, I guess, respond to the merits underlying the assumption regarding whether or not there's any jurisdiction to review the reason. I would actually think that the issue, some of the issue presented in this case is slightly different than when the board actually exercises its discretion to, or to either grant or deny a sua sponsa motion, because here the board was operating under the belief that it did not have discretion, which I think has workable legal standards that do provide a basis and jurisdiction for review, and in fact, the precedent cited by the government that held that, you know, in some cases, that the departure bar could apply to sua sponsa re-openings isn't self-reaching the merits of a similar question to the one we're submitting here. So Avala's Navarro-Miranda, those cases considered and ruled whether or not the departure bar could even apply at all. And here we're raising a different question of, you know, if it applies, in what way? Is it a claim processing bar or a jurisdictional bar? And, you know, for the same reason the court was able to reach the first question of whether or not the bar could be applied at all, I think it would similarly have jurisdiction to answer the question of in what way does the bar apply, if it were not for the motion to dismiss. You and your colleagues have done an extraordinary job in representing your client. In the letter brief, I thought in particular the supplemental one that brought these authorities to our attention was incredible and well done. So my compliments on them. The thing I don't get is that if we don't have jurisdiction, so let's just put a pin in those authorities for a second and just try to think about this logically from the beginning to the end. If we don't have jurisdiction over a decision whether to grant a motion to re-open, then we don't have jurisdiction to evaluate the reasons given for not granting the motion to re-open. So just take an absurd hypothetical. Suppose that you file a motion for sua sponsa re-opening under the regulation and the agency does address it and they say apples and bananas, therefore denied. It's just a complete nonsense explanation. The very lack of jurisdiction to evaluate what they said suggests that we can't get into whether apples and bananas is a legitimate response to your motion to re-open sua sponsa. Do you see how I'm getting at it? I understand the hypothetical. I dispute the premise in the Mejia decision that Fifth Circuit specifically said that there were workable legal standards and so I do not actually, I think the question is when it is an exercise purely of discretion, the court's precedents have found that there is no jurisdiction. But when there are workable legal standards to apply to the decision and the basis for it, this court has already in multiple instances. Can I ask you a problem? Do you mind if I? Please. I'm glad you brought up Judge Udenis' opinion in Mejia. So it's obviously a paragraph long. The explanation that you just quoted to me is a single sentence and here's what I don't get about it and I hope you can help me understand it. He says they raise a constitutional, Mejia raises a constitutional claim. He's clearly looking at 1252 A2D because it gives us jurisdiction over constitutional claims and questions of law. But the premise of my question that I thought you were disputing has nothing to do with 1252. All of our cases about not having jurisdiction over a motion to reopen sua sponte have nothing to do with 1252. The prohibition of jurisdiction comes from 5 U.S.C. 701 A1 or A2, the one that says committed to agency discretion by law. And so if it's committed to agency discretion, it's committed to agency discretion. You see where I'm getting hung up? These are two different jurisdictional prohibitions and answering that one of them doesn't apply doesn't actually answer my question about the first one. I believe even the Supreme Court's interpretation of the statutory provision does provide for review when there is a decision based on articulable legal standards. So Kukana footnote 18, the footnote 18 in Justice Kagan's opinion says that every court of appeals in the United States that has considered this question has said that 701, including ours, we've done it multiple times, but we're not alone. Every court's done this. That 701 is what prohibits the jurisdiction over the denial of a motion to reopen for whatever reason or any reason. So it's a totally independent jurisdictional prohibition. It has nothing to do with MHIA. I realize there are other courts of appeals. That's why I was commending your letter. It's wonderful. It's a model, really, about how this should be done because you gave us all of the good authorities. We understand all of the circuit precedent across the United States. It's addressing a different statutory prohibition than the one in 701. I think the basis for why we don't even, I guess, get to the question of the underlying decision to exercise its discretion. So the question of the exercise of discretion is one that is obviously committed to discretion by law, but the law does not commit the question for its own jurisdiction to its discretion. And that's the Union Pacific case, that there is no discretion to limit your own jurisdiction. And so by making a decision that says we choose not to reopen this for apples and bananas, but saying we have no power to, that decision, its own adjudicatory authority, is not committed to the board's discretion. Thank you. You've saved some time for the public. Thank you. Mr. Hogan? Good afternoon. May it please the Court. I'm in favor of the government. With regards to the motion to withdraw, the government agrees with everything that counsel has said. A grant, a denial, or, it would not affect the pending motion to reopen. It's the petitioner's prerogative. I would just point out one thing to the panel, that even though the Homeland Security joined in the motion to reopen, that does not mean that reopening would be automatic. The board still does retain discretion to deny that motion. But in that case, the petitioner could file a fresh review petition and seek to hear from that. Mr. Hogan, you have a very soft and pleasant voice, but it's not projecting very well. I apologize. That's not a criticism. Thank you. With regards to the request for a non-pro-tunk reopening, as this Court ruled in Flores-Moreno, there is no end run to the equitable tolling requirement. In that case, petitioner tried to ask for, to avoid the equitable tolling requirement by saying that there was a gross miscarriage of justice, and they're simply, it's, the INA is clear. It either has to be timely or, as this Court's precedent says, you have to show due diligence to seeking tolling. And finally, with regards to sua sponte, unfortunately for the petitioner in this case, this Court's precedent is clear. There is no jurisdiction. As Your Honor pointed out, 1252A2D does not apply, and it's committed to the agency's discretion. But fortunately for the petitioner in this case, if reopening is granted, he's not, he's in a better position now that Homeland Security has joined in the motion to reopen. The INA very specifically limits petitioners in this circumstance to a single motion to reopen. What is this, the legal basis for multiple motions to reopen? Well, the INA limits it, Your Honor. The regulation governing joint motions to reopen, they can basically, that's an exception. So, isn't it, is it true, I guess I've never really thought about this before, but as this argument has really highlighted it, isn't it true, I guess, in every single one of these immigration cases that we see, that no matter what we say, for any reason in any immigration  situation, they could, they would just have to establish some kind of exception applies. Like, for example, if they're applying for asylum, they would have to show changed circumstances in their case. So, I guess now I'm struggling to understand how it moots the case, because that would be true in every single one of these MTRs, right, is that we see these all the time, right? I don't believe it moots it to the point where there's no longer a final order. Of course, there's a final order unless and until the board rules on it. I believe, as Petitioner's Counsel was stating earlier, it moots it to the point where the issues that he was trying to surmount or overcome, they're gone now. The timeliness issue, it's no longer a factor in this case. It's not something he has to show to the agency anymore. Basically, now, the joint motion group is my understanding, is he eligible for the 1182C waiver or not? And if he is, then I believe by operation of law, he becomes a lawful permanent resident again. And again, if it's denied, he could seek judicial review. If it's granted, then it's a good position for him to be in. Does the panel have any other questions? The Governor will take the rest. I guess, getting back to opposing counsel went through the three questions that we had asked. Why don't you give us your summary? I heard him say the result is the same in any of those cases. Why don't you tell us what the Attorney General's position is on that? I would agree with Petitioner's Counsel, Your Honor, that if the motion to withdraw is granted or denied, either way, there's going to be a new board decision shortly, which then that in itself would move this court's jurisdiction. But I would agree there's no case or controversy anymore because as we stated earlier, the issues that the Petitioner was trying to send out earlier, they're not existing anymore. Do you have a position with respect to our colloquy about different kinds of dismissal? I realize that if we were going to exercise jurisdiction over the petition, that would be a little bit different. But if the judgment of the court was that there's no jurisdiction over this because there's no jurisdiction over the Munk-Potunk claim, there's no jurisdiction over the Swiss-Fonte motion, then aren't all dismissals created equal, I guess? The government would tend to agree that. Either way, a dismissal under either would not affect Petitioner's eligibility for reopening for the Brooklyn Board. But that would be true any time. So I'm just thinking of a case I had, which was called Carain. I know it's cited in some of these materials. One of the holdings in that case is that we don't have jurisdiction over the denial of a motion to reopen. But of course, Carain could have then filed another motion to reopen and the Board could have accepted it or not. That would always be true, I guess. It would, Your Honor, but in this case, whatever jurisdictional grounds the panel chooses, it's not going to affect Petitioner's eligibility. It's really the Court's prerogative how they want to dismiss the case at this point. But given under the local rule, as Petitioner's counsel pointed out, it is Petitioner's right to withdraw the petition at any time if he so chooses. It seems that he wanted to do so here. Thank you. Thank you. Okay, for Rebella. Your Honor, just addressing I think briefly a concern about whether or not this could happen in every case. The regulations also have a numerical bar on motions to reopen. That bar is also not applicable in joint motions that the DHS files. So the situation that makes Petitioner's case different than I think every case that might come across is DHS joining in the motion to surmount both the time and the number bars. All right. Anything else? Nothing for me, Your Honor. All right. Thank you. Thanks to both sides for your good work in this case. This case is under submission.